UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TERRA M.,

          Plaintiff,

   v.

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.

Case No. C21-0609-SKV

ORDER REVERSING THE COMMISSIONER'S DECISION

Plaintiff seeks review of the partial denial of her application for Supplemental Security Income. Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, the Court **REVERSES** the Commissioner's final decision to the extent it finds medical improvement as of September 1, 2019, and **REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

Plaintiff was born in 1977, has a high school diploma, and previously worked as an optical office apprentice and casino card dealer. AR 455-56. Plaintiff was last gainfully employed in 2004. AR 456.

In March 2016, Plaintiff applied for benefits, alleging disability as of September 12,

ORDER REVERSING THE COMMISSIONER'S
DECISION - 1

2012.[1]  AR 417-22.  Plaintiff's application was denied initially and on reconsideration, and Plaintiff requested a hearing.  AR 231-34, 243-52.  Plaintiff's first hearing, in May 2018, was continued in order to develop the record.  AR 55-66.  Plaintiff's supplemental hearing was scheduled for June 2019, but Plaintiff failed to appear.  AR 67-79.  The ALJ nonetheless heard testimony from a vocational expert, and subsequently issued an unfavorable decision.  AR 202-16.

The Appeals Council granted Plaintiff's request for review and remanded to the ALJ for further proceedings.  AR 225-27.  After the ALJ held another hearing in August 2020 (AR 80-107), the ALJ issued a decision finding Plaintiff disabled from January 25, 2018, through August 31, 2019, but not disabled before or after that period.  AR 24-46.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[2] the ALJ found:

**Step one**:  Plaintiff has not engaged in substantial gainful activity since the application date.

**Step two**:  Plaintiff has the following severe impairments: migraine headaches, seizure disorder, personality disorder, cognitive disorder, post-traumatic stress disorder, depressive disorder, anxiety disorder, lumbar degenerative disc disease, and obesity.

**Step three**:  These impairments do not meet or equal the requirements of a listed impairment.[3]

**Residual Functional Capacity (RFC)**:  Before January 25, 2018, Plaintiff could perform sedentary work with additional limitations: she was limited to performing unskilled, repetitive, routine tasks in two-hour increments, and could have no contact with the public.  She could work in proximity to, but not in coordination with, co-workers.  She could have had occasional contact with supervisors.  She could occasionally stoop and crouch.  She could not crawl, kneel, or climb ramps, stairs, ropes, ladders, or scaffolds.  She could frequently handle and finger.  She could never balance, work at heights, drive, or work in proximity to hazardous conditions.  She would have been absent from work eleven times each year.  In the workplace, she had to use a cane for walking.

---

[1] At the first administrative hearing, Plaintiff amended her alleged onset date to March 1, 2016.  AR 65.
[2] 20 C.F.R. §§ 404.1520, 416.920.
[3] 20 C.F.R. Part 404, Subpart P, App. 1.

From January 25, 2018, through August 31, 2019, Plaintiff had the same RFC as she did pre-January 25, 2018, with one additional limitation: she could only sit for a total of four hours in an eight-hour workday, due to increased back pain.

Beginning September 1, 2019, Plaintiff had the same RFC she had before January 25, 2018.

**Step four**: Plaintiff has no past relevant work.

**Step five**: As there are jobs that exist in significant numbers in the national economy that Plaintiff could have performed before January 25, 2018, and on September 1, 2019, and thereafter, Plaintiff was not disabled during those time periods.

From January 25, 2018, through August 31, 2019, there were no jobs that exist in significant numbers in the national economy that Plaintiff could have performed, and therefore she was disabled during that period of time.

AR 24-46.

The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision.  AR 1-6.  Plaintiff appealed the final decision of the Commissioner to this Court.  Dkt. 4.

## LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on harmful legal error or not supported by substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005).  As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination."  *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted).  The Court looks to "the record as a whole to determine whether the error alters the outcome of the case."  *Id*.

Substantial evidence is "more than a mere scintilla.  It means - and means only - such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

1   *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (cleaned up); *Magallanes v. Bowen*, 881 F.2d
2   747, 750 (9th Cir. 1989).  The ALJ is responsible for evaluating symptom testimony, resolving
3   conflicts in medical testimony, and resolving any other ambiguities that might exist.  *Andrews v.*
4   *Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record
5   as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the
6   Commissioner.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is
7   susceptible to more than one rational interpretation, it is the Commissioner's conclusion that
8   must be upheld.  *Id.*

## DISCUSSION

10   Plaintiff argues the ALJ erred in assessing certain medical opinions, and in finding
11   Plaintiff not disabled before January 25, 2018, or after September 1, 2019.  The Commissioner
12   argues the ALJ's decision is free of harmful legal error, supported by substantial evidence, and
13   should be affirmed.

14   **A.      The ALJ Did Not Harmfully Err in Assessing the Medical Opinion Evidence**

15   Plaintiff challenges the ALJ's assessment of multiple medical opinions, each of which the
16   Court will address in turn.

17           *1.      Legal Standards*[4]

18   Where not contradicted by another doctor, a treating or examining doctor's opinion may
19   be rejected only for "'clear and convincing'" reasons.  *Lester v. Chater*, 81 F.3d 821, 830 (9th
20   Cir. 1996) (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)).  Where
21   contradicted, a treating or examining doctor's opinion may not be rejected without "'specific and

---

[4] Because Plaintiff applied for benefits before March 27, 2017, the regulations set forth in 20 C.F.R. § 416.927 apply to the ALJ's consideration of medical opinions.

1  legitimate reasons' supported by substantial evidence in the record for so doing." *Id*. at 830-31
2  (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

3              *2.      Margaret Dolan, Ph.D.*

4      Dr. Dolan examined Plaintiff in June 2016 and wrote a narrative report describing her
5  mental symptoms and limitations. AR 780-91. Dr. Dolan had access to a few medical records as
6  well as a third-party function report completed by Plaintiff's daughter. AR 781-82. The ALJ
7  gave little weight to Dr. Dolan's opinion, finding that because it was based on an examination
8  early in the adjudicated period, it does not address Plaintiff's mental functioning throughout the
9  whole period. AR 37. The ALJ noted that although Dr. Dolan described Plaintiff as unable to
10 live independently, she was a single parent at the time of the examination. *Id*. Lastly, the ALJ
11 noted that Dr. Dolan referred to Plaintiff's self-reports as the basis for many of her conclusions,
12 which undercut the reliability of her opinion. *Id*.

13     The Court agrees with Plaintiff that the timing of Dr. Dolan's opinion is not a legitimate
14 basis to discount it. *See* Dkt. 22 at 5. But the Court does not agree that the ALJ erred in finding
15 Dr. Dolan's opinion to be largely based on Plaintiff's self-reporting. The report repeatedly cites
16 Plaintiff's self-report as the basis for Dr. Dolan's conclusions as to Plaintiff's ability to reason,
17 memory capabilities, social abilities, and adaptation skills. *See* AR 789. The entirety of the
18 "functional information" section of Dr. Dolan's opinion report consists of verbatim quotes from
19 Plaintiff's statements. *See* AR 786-87. Because the ALJ discounted Plaintiff's self-reporting
20 and Plaintiff does not assign error to that portion of the ALJ's decision, the ALJ did not err in
21 discounting Dr. Dolan's opinion to the degree that she relied on Plaintiff's self-reporting in
22 rendering her opinion. *See Ghanim v. Colvin*, 763 F.3d 1154, 1162-63 (9th Cir. 2014) (ALJ may
23 reject treating provider's opinions if based "to a large extent" on discredited self-reports and not

clinical evidence). Plaintiff has therefore not shown harmful legal error in the ALJ's assessment of Dr. Dolan's opinion.

### 3. *George Ankuta, Ph.D.*

Dr. Ankuta examined Plaintiff in November 2018 and wrote a narrative report and completed a form describing her mental symptoms and limitations. AR 1029-34. Dr. Ankuta's medical source statement reads as follows:

> [Plaintiff] has a good fund of knowledge. She demonstrated some ability to think abstractly. Her memory was adequate for recalling simple but not complex instructions at work. She was able to attend to questions asked. Her attention and concentration were fair to adequate. She may be able to sustain the pace of competitive work. She related well with people at work in the past. She has one good friend. Her two children visit her once a week and once a month. She had one 10-year marriage that was domestically violent. She was polite and cooperative and pleasant with the evaluator. She may be able to function socially in a competitive work situation. She may be able to tolerate the emotional stress of competitive work. She has not worked since 2004. The extent to which her medical problems interfere with her ability to work is outside the scope of this evaluation. She has been treated at Sound Mental Health for the past year and she is prescribed Citalopram 40mg for the past year and Abilify 2mg for the past few months and Hydroxizine PRN.

AR 1031.

The ALJ gave some weight to Dr. Ankuta's opinion, finding that Dr. Ankuta summarized Plaintiff's test results and/or described the severity of her symptoms rather than described her RFC (*i.e.*, the most she could do). AR 37. The ALJ also noted that Dr. Ankuta used vague terms such as "may" or "might" in describing Plaintiff's limitations, and did not provide any explanation to accompany the limitations described on the checkbox form. *Id.*

Plaintiff acknowledges that some of Dr. Ankuta's conclusions in the narrative report use vague terms and/or do not describe functional limitations, but Plaintiff points to the checkbox form as clarification. Dkt. 22 at 9. In this way, Plaintiff argues that when the narrative report and checkbox form are read together, Dr. Ankuta's conclusions are specific and explained. Dkt.

ORDER REVERSING THE COMMISSIONER'S
DECISION - 6

22 at 9-10.  Dr. Ankuta indeed identified particular functional limitations in the checkbox form, and the ALJ generally accounted for those limitations in the RFC assessment.  Specifically, Dr. Ankuta indicated that Plaintiff would not be able to complete complex tasks and would have moderate social limitations (AR 1032-33), and these are consistent with the mental limitations described in the ALJ's RFC assessment (AR 31-32, 41).  The ALJ did note, however, that Dr. Ankuta did not explain why Plaintiff was unable to make judgments on complex work-related decisions (AR 37), and Dr. Ankuta's narrative report does not directly reference Plaintiff's decision-making abilities at all.  *See* AR 1029-31.  Thus, the ALJ reasonably found that the basis for Dr. Ankuta's opinion as to Plaintiff's decision-making abilities was unexplained, and the ALJ did not err in discounting this part of Dr. Ankuta's opinion on that basis.  *See Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020).

Because the ALJ accounted for the limitations described in Dr. Ankuta's checkbox form or properly discounted them as unexplained, and reasonably found that Dr. Ankuta's narrative report was vague or otherwise failed to address Plaintiff's RFC, Plaintiff has failed to show that the ALJ harmfully erred in discounting Dr. Ankuta's opinion.

### 4. State Agency Consultants

The State agency psychologist consultant opined, *inter alia*, that Plaintiff should not interact with the public because she does not want "to be near others (especially males)[,]" but could handle "intermittent/low stress contacts w/co-workers & supervisors that are not male." AR 177.  The ALJ gave the other parts of the opinion great weight, but discounted the social limitations "because the record does not suggest that the claimant had significant difficulty interacting with providers, including those who were male[.]"  AR 37.

Plaintiff's opening brief contends that the ALJ offered "no explanation why [the portion of the opinion limiting contact with male co-workers] was rejected." Dkt. 22 at 8. Plaintiff overlooks the specific rationale quoted in the previous paragraph, *supra*. Because Plaintiff failed to address that explanation in her opening brief, Plaintiff failed to meet her burden to show error in the ALJ's assessment of the State agency opinion. Plaintiff's arguments raised for the first time in reply (Dkt. 27 at 4-5) are insufficient. *See Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("Our circuit has repeatedly admonished that we cannot manufacture arguments for an appellant and therefore we will not consider any claims that were not actually argued in appellant's opening brief. . . . A bare assertion of an issue does not preserve a claim." (cleaned up)).

**B.     The ALJ Erred in Finding Medical Improvement as of September 1, 2019**

As noted above, the ALJ found that Plaintiff was not disabled before January 25, 2018, or after August 31, 2019, because the record showed that her RFC during those time periods permitted her to perform jobs that exist in significant numbers in the national economy. AR 31-45. Plaintiff does not challenge the ALJ's finding that she was disabled from January 25, 2018, through August 31, 2019, but argues that the ALJ erred in assessing her capabilities during the other portions of the adjudicated period because: (1) the ALJ erroneously discounted State agency opinions as to her physical functioning, (2) the ALJ mischaracterized the MRI evidence, and (3) the ALJ's finding that Plaintiff's RFC improved as of September 1, 2019, is not supported by substantial evidence. Dkt. 22 at 11-18. The Court will address each argument in turn.

       *1.     Opinions as to Physical Functioning*

The State agency medical consultant opined in July 2016 that Plaintiff was capable of

ORDER REVERSING THE COMMISSIONER'S
DECISION - 8

performing light work, with additional limitations as to environmental factors and pushing/pulling with the left arm due to reduced grip strength. AR 192-94. The ALJ gave significant weight to most of the State agency opinion, but discounted the left arm restrictions and environmental limitations as inconsistent "with the overall record discussed above." AR 36. Earlier in the decision, the ALJ noted Plaintiff's reduced grip strength and indicated that he limited Plaintiff to frequent handling and fingering to account for that. AR 34. The ALJ also found that Plaintiff's obesity caused some hazard restrictions that he included in the RFC assessment. *Id*.

Plaintiff argues that the ALJ erred in finding the State agency opinion inconsistent with unspecified medical evidence "discussed above." Dkt. 22 at 12. The Court must read the ALJ's decision as a whole, however, and thus properly considers whether the entirety of the ALJ's reasoning is sufficiently explained. *See Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004) ("Because it is proper to read the ALJ's decision as a whole, and because it would be a needless formality to have the ALJ repeat substantially similar factual analyses at both steps three and five, we consider the ALJ's treatment of the record evidence in support of both his conclusions at steps three and five.").

As noted *supra*, the ALJ acknowledged Plaintiff's reduced grip strength on the left and explained that he limited Plaintiff to frequent handling and fingering to account for that loss of grip strength. AR 34. The ALJ further noted that although a consultative examiner opined in June 2016 that Plaintiff's reduced grip strength would result in a restriction to occasional grasping and gripping with the left hand (Dkt. 22 at 12), Plaintiff had not reported any problems using her hands when she described her limitations in agency paperwork in April 2016. AR 36 (referencing AR 477). The Court finds that when the ALJ's decision is read as a whole, the ALJ

adequately explained why he found that a restriction to frequent handling and fingering reasonably accounted for Plaintiff's reduced grip strength with her left arm. This restriction is consistent with the State agency opinion and the ALJ adequately explained why Plaintiff's lack of treatment for carpal tunnel syndrome and lack of reporting any hand deficits undermined any suggestion that her hand-related restrictions were more severe than described in the RFC assessment. *See* AR 28, 34, 36.

To the extent that Plaintiff also argues (Dkt. 22 at 13-14) that the ALJ erred in crediting in part the physical opinions due to their timing (early in the adjudicated period), Plaintiff has not shown that the ALJ erred in crediting opinions that date to the adjudicated period to the extent that they are consistent with the longitudinal record. As emphasized by the Commissioner (Dkt. 26 at 11), the ALJ limited Plaintiff to performing sedentary work during her periods of non-disability and therefore found Plaintiff to be even more restricted than the disputed physical opinions indicated. Plaintiff has not met her burden to show that the ALJ erroneously assessed the opinion evidence pertaining to her physical functioning in finding her not disabled before January 25, 2018.[5]

    2.    *MRI Evidence*

Plaintiff argues that the ALJ erred in relying on MRI evidence as "trigger[ing]" a finding of disability. Dkt. 22 at 14. Plaintiff does not dispute the ALJ's finding that she was disabled, but contends that the ALJ mischaracterized the MRI evidence in order to find that she became disabled on the date of an MRI.

In finding Plaintiff disabled beginning on January 25, 2018, the ALJ noted that a treatment note from that day indicates that Plaintiff "reported a recent onset of markedly

---

[5] As explained *infra*, the Court does find error in the ALJ's findings regarding the period beginning on September 1, 2019, for reasons unrelated to the arguments discussed in this section.

increased back and left leg pain" and that "imaging confirmed moderate to severe L5 stenosis with compromise of the L5 nerve root[.]" AR 39-40 (referencing AR 952-56). The ALJ summarized Plaintiff's subsequent treatment, leading to surgery in March 2019, and found that she had returned to pre-January 25, 2018 levels of functioning by September 1, 2019. AR 40, 42-45.

According to Plaintiff, she had been reporting back pain for years prior to January 25, 2018, and there was no acute event on January 25, 2018, that led to an onset of disability. Dkt. 22 at 14-15. Thus, Plaintiff contends that the ALJ's selection of January 25, 2018, as the date her disability onset is "completely arbitrary" and that her own alleged amended onset date (March 1, 2016) should have been used. *Id*.

The Court disagrees with Plaintiff's characterization of the ALJ's decision. The ALJ noted that in the January 25, 2018 treatment note, Plaintiff complained of recently worsening symptoms, which led her to pursue emergency treatment. *See* AR 952-56, 959. Thus, while Plaintiff did complain of back pain for years, as she emphasizes in her brief (Dkt. 22 at 14-15), she went to the emergency room on January 25, 2018, reporting a sudden increase of pain, and the imaging results led to a more severe diagnosis than had occurred previously. *See* AR 28, 34, 39-40; *see also* AR 1446 (Plaintiff's description of her pain exacerbation). The ALJ did not, as Plaintiff contends, state that Plaintiff's disability was triggered by an MRI on that date; the ALJ instead emphasized that Plaintiff reported a worsening of symptoms on that date and that the imaging results confirmed a more severe diagnosis. *Id*. The ALJ tied the disability onset to medical evidence that reasonably supports his finding, and although Plaintiff would interpret the record to support an earlier onset date, she has not shown that the ALJ erred in finding that the January 25, 2018 treatment note established disability as of that date. *See generally Wellington*

ORDER REVERSING THE COMMISSIONER'S
DECISION - 11

*v. Berryhill*, 878 F.3d 867, 872-76 (9th Cir. 2017) (affirming an ALJ's identification of a disability onset date that was supported by substantial evidence).

### 3. Medical Improvement

In a case such as this, where an ALJ finds a claimant disabled for only some part of the adjudicated period, the ALJ should "compare the medical evidence used to determine the claimant was disabled with the medical evidence existing at the time of possible medical improvement." *Attmore v. Colvin*, 827 F.3d 872, 876 (9th Cir. 2016). In this case, the ALJ found that during Plaintiff's period of disability, she had increased back pain that limited her to sitting four hours per day, and thus she could not perform sedentary work during that period. AR 40. The ALJ found that Plaintiff's back pain improved after a March 2019 back surgery so that by September 1, 2019, she was no longer restricted to sitting four hours per day and had the same RFC she had before her period of disability began. AR 41-45. Plaintiff argues that the medical records demonstrate that she recovered from her March 2019 surgery, but not that her condition had improved to the point that she could work. Dkt. 22 at 16-17. Plaintiff emphasizes that there are no medical opinions in the record dating to the post-September 1, 2019 time period, and thus contends that the ALJ merely speculated as a layperson that Plaintiff's functioning had increased. Dkt. 22 at 17-18.

It is undisputed that no medical opinions as to Plaintiff's functionality post-date her March 2019 surgery, but this fact alone does not deprive the ALJ of the duty or ability to assess Plaintiff's RFC "based on all relevant evidence in the record." 20 C.F.R. § 416.945(a)(1); *see also* 20 C.F.R. §§ 416.927(d)(2), 416.946(c) (reserving the "final responsibility" for decision issues such as an individual's RFC "to the Commissioner"); *Rounds v. Comm'r of Social Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) (explaining that the ALJ's responsibility in assessing

RFC includes "translating and incorporating clinical findings into a succinct RFC"). The ALJ's finding of disability was based on Plaintiff's reduced ability to sit, due to increased back pain (AR 39), but the ALJ found that her back pain gradually decreased after surgery to the point that she experienced sufficient "functional gains" that allowed her to walk a half-mile to a mile. *See, e.g.*, AR 1498, 1521. In making this finding, the ALJ summarized the medical evidence during, *inter alia*, the period that Plaintiff was found disabled and the period thereafter. AR 42. Because the ALJ found that Plaintiff's "back symptoms significantly improved no later than September 1, 2019[,]" the Court finds that the ALJ properly compared the severity of Plaintiff's condition during the period of disability with her condition beginning on September 1, 2019. *See Attmore*, 827 F.3d at 877.

As instructed by *Attmore*, the Court now turns to consider whether the ALJ's finding of improvement is supported by substantial evidence. 827 F.3d at 875 (indicating that in closed-period cases, the Court first looks to whether the ALJ conducted a proper comparison, and then whether a finding of medical improvement is supported by substantial evidence). There is only one exhibit in the record addressing the post-disability period, containing fewer than 50 pages of treatment notes that post-date September 1, 2019. *See* AR 1396-1414, 1498-1526.

In September 2019, Plaintiff's treating pain specialist noted that Plaintiff "[c]ontinues to struggle with postoperative pain. But after an extensive discussion, she is demonstrating clinical evidence of functional gains and motivation to improve." AR 1498. At that time, Plaintiff reported an ability to walk a mile. *Id*.

The following month, Plaintiff's treating pain specialist described her as "continu[ing[ to struggle with chronic postoperative back pain." AR 1503. The doctor suspected, in light of "her

poor clinical picture today," that her medication should be adjusted. *Id*. Plaintiff reported an increase in the intensity of her pain, but not its frequency. AR 1504.

After Plaintiff's medication was adjusted, she saw her pain specialist again and reported that she since she had discontinued oxycodone, she "has been complaining more of pain and diminished functional status." AR 1509. She reported a need to reduce her water therapy and that she had "minimized her land-based walks since discontinuing her oxycodone." *Id*.

In December 2019, the pain specialist wrote that Plaintiff "continues to exhibit catastrophizing pain behaviors since coming off the opioids but I strongly advised against restarting it." AR 1514. During that appointment, Plaintiff acknowledged "that her pain is amplified because of her unstable mental health." AR 1515. Plaintiff was not taking all of her medications at that time, and restarted that regimen. AR 1514-15.

The next treatment note is from March 2020, a year after her surgery, where Plaintiff reported that she "continues to have debilitating pain that has somewhat stabilized in the last visit." AR 1521. Medication was helpful, but the "intensity and frequency of pain is stable but no worse." *Id*. Plaintiff reported 8/10 pain that was "[e]xacerbated by prolonged sitting" and "[a]lleviated by standing." *Id*. The subsequent treatment notes pertain to different physicians Plaintiff saw for different complaints (AR 1396-1414), and therefore the March 2020 treatment note with Plaintiff's pain specialist is the most recent evidence in the record regarding Plaintiff's back pain and related symptoms.

None of the post-September 1, 2019 treatment notes describe the significant improvement the ALJ described in the decision. *See* AR 42. Instead, the evidence suggests that Plaintiff continued to experience pain that precluded sitting for prolonged periods of time, and yet the ALJ found that during the post-disability period, Plaintiff was no longer limited to sitting

ORDER REVERSING THE COMMISSIONER'S
DECISION - 14

four hours per day and was therefore no longer disabled.  There is no medical evidence in the record that suggests that Plaintiff's sitting abilities increased after September 1, 2019, and the record instead suggests that Plaintiff's back pain remained stable or increased.  AR 1498-1526.  The ALJ erred in relying primarily on the few records pertaining to Plaintiff's treatment for other conditions as evidence that Plaintiff's back pain continued to improve.  *See* AR 42 (citing AR 1391-1411).

For these reasons, the record does not contain substantial evidence to support the ALJ's finding of improvement in the post-disability period.  On remand, the ALJ shall update the record and reconsider whether Plaintiff experienced medical improvement at any point after September 1, 2019.[6]

## CONCLUSION

For the reasons set forth above, the Commissioner's final decision is **REVERSED IN PART**, as to the finding of medical improvement beginning on September 1, 2019, and the other portions of the decision are not disturbed.  This case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g) and the ALJ shall reconsider the finding of medical improvement on September 1, 2019, in light of the updated record.

Dated this 5th day of May, 2022.

S. KATE VAUGHAN
United States Magistrate Judge

---

[6] Although Plaintiff requests in the alternative a remand for a finding of disability (Dkt. 22 at 18), she has not shown that this extraordinary remedy would be appropriate here.  *See Leon v. Berryhill*, 880 F.3d 1044, 1045 (9th Cir. 2017) ("An automatic award of benefits in a disability benefits case is a rare and prophylactic exception to the well-established ordinary remand rule.").  Further proceedings would serve the useful purpose of determining whether the updated longitudinal record suggests that Plaintiff experienced sustained improvement after September 1, 2019.

ORDER REVERSING THE COMMISSIONER'S
DECISION - 15